1
2
3
4
5
6
7
8            UNITED STATES DISTRICT COURT

9          FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   FORREST HENRY GILLIAM,                    No.  2:24-cv-1613 WBS AC P

12                   Petitioner,

13        v.                                    FINDINGS AND RECOMMENDATIONS

14   PATRICK COVELLO, Warden,

15                   Respondent.

16

17          Petitioner is a California state prisoner proceeding through court-appointed counsel with

18   an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  The action proceeds on

19   the amended petition filed on February 14, 2025, ECF No. 20, which challenges a 2022 jury

20   finding that petitioner was legally sane at the time of the 2018 shooting which resulted in his

21   conviction for first degree murder and related offenses.  Respondent has answered, ECF No. 28,

22   and petitioner has filed a traverse, ECF No. 31.

23                                   BACKGROUND

24   I.      Proceedings in the Trial Court

25          A.  Preliminary Proceedings and Competency

26          On October 16, 2018, petitioner was charged by criminal complaint with the murder of

27   Gloria Navarro, the attempted murder of Steven Navarro, and related offenses.  On November 28,

28   2018, the proceedings were suspended pursuant to Cal. Penal Code section 1368, to permit an

1

examination of petitioner's mental competency to stand trial.  After an examination and hearing, the trial court found petitioner mentally incompetent on February 14, 2019.  Petitioner was committed for inpatient treatment at the Department of State Hospitals, where he consented to anti-psychotic medication as part of his treatment.  The trial court ordered the Atascadero State Hospital ("ASH") to provide regular reports regarding petitioner's progress.

On March 2, 2021, the trial court held a competency hearing and found that petitioner had sufficiently stabilized that he was mentally competent to stand trial.  A preliminary hearing was held on May 25, 2021, and petitioner was held to answer on an amended information charging murder, attempted first degree murder, and illegal possession of a firearm, along with numerous enhancements and sentencing allegations.  Petitioner plead not guilty and not guilty by reason of insanity.

B.  The Evidence Presented at Trial: Guilt Phase[1]

1.  Prosecution Case

The jury was presented evidence of the following facts.  Petitioner lived with his friend Steven Navarro, with whom he had previously had a sexual relationship, Steven's mother Gloria, and another housemate.  Petitioner used methamphetamine.  He sometimes behaved bizarrely or said strange things.  A few months before the shooting he had smashed a drinking glass into Steven's head in a dispute over a cell phone.

Petitioner was not at home on the night of October 13, 2018.  In the early morning of October 14, 2018, he returned to the house and shot both Steven and Gloria in their beds.  Gloria was killed, and Steven survived.  Steven suffered from multiple gunshot wounds, required surgery, spent weeks in the hospital, and was left with permanent injuries to his hand.

Following his arrest, petitioner told a detective that he and Steven had a sexual relationship, and that sometimes he would wake up to Steven doing things to him, which petitioner did not like.  Petitioner also said that Steven was his biological father, and he expressed

---

[1]  Because petitioner does not challenge the verdicts of guilt, the court here provides a very abbreviated summary of the evidence.

anger toward Steven.  He said that he shot Gloria because he was angry at her for taking his EBT card, locking him out of the house, and telling him when he could or could not shower.  When the detective left petitioner alone in the interview room, he talked to himself.

### 2.  Defense Case

Petitioner testified in his own defense that he took medication for schizophrenia.  He said that Steven had harmed him by shooting out his teeth with a firearm called a "gardener" when no one else was home.  Sometimes he woke up to find Steven touching him sexually.  The unwanted sexual contact went on for about a year.  He hit Steven with a glass cup after Steven had raped him.  Petitioner acknowledged that he had used methamphetamine within 24 hours before the shooting.  He said he shot Steven in a blackout, and had not intended to shoot him when he arrived at the house.  He shot Gloria because he thought she was going for a pistol.

### 3.  Outcome

The jury found petitioner guilty on all counts.  The jury also found true that petitioner had personally and intentionally discharged a firearm causing death or great bodily injury, and that he had inflicted great bodily injury involving domestic violence.  It found not true that petitioner had murdered Gloria while lying in wait.

## C.  The Evidence Presented at Trial: Sanity Phase

### 1.  Defense Case

#### a.  Testimony of Dr. Fraser[2]

Dr. Teresa Fraser was a psychologist and a forensic evaluator at ASH, who evaluated petitioner on at least two occasions during his time at the facility between May 2019 and March 2020.  Petitioner appeared to experience hallucinations and exhibited delusional beliefs.  Specifically, petitioner reported that that his brothers had persecuted him in various ways, including placing implants into his teeth.  He believed that the implants were causing rotting and that worms and maggots were coming out of the holes in his teeth.  Petitioner also believed that he had been shot in the mouth, causing the implants to leak poison.  Id.  He said that his brothers

---

[2]  Dr. Fraser's testimony is found at ECF No. 17-19 at 13-34 (14 RT 878-899).

1  had provided an AK-47 to one of the victims, and that he knew Gloria was not dead because she

2  talked to him.

3      Dr. Fraser diagnosed petitioner with schizophrenia, antisocial personality disorder,

4  stimulant use disorder (moderate to severe), and cannabis use disorder (moderate to severe).  He

5  responded positively to schizophrenia medication although some delusions and hallucinations

6  persisted.  Cognitive testing identified significant deficits in functional domains including the

7  ability to process information and engage in perceptual reasoning.

8      Prior to hospitalization, petitioner's provisional diagnoses had included substance-induced

9  psychosis as well as schizophrenia.  Although methamphetamine use can induce psychotic

10 symptoms, and it was possible that such use contributed to the onset of petitioner's symptoms,

11 Dr. Fraser emphasized that petitioner's symptoms had persisted for more than six months at ASH

12 following discontinuation of methamphetamine.  Also, his symptoms did not readily resolve with

13 antipsychotics, which would typically occur with a standard substance-induced psychotic

14 disorder.  Accordingly, she concluded that petitioner's condition was more consistent with a

15 schizophrenia spectrum disorder than a short-term substance-induced disorder.

16     Dr. Fraser did not offer an opinion on the issue of sanity.

17         b.  Testimony of Dr. Blak[3]

18     Dr. Richard Blak, a clinical and forensic psychologist, reviewed plaintiff's ASH file and

19 other records, interviewed petitioner in May 2022, and reached a diagnosis of schizophrenia and

20 substance abuse disorder.  During the evaluation, petitioner expressed his continuing beliefs that

21 his brother had shot out his teeth with a gun, leading to implants and to maggots or worms in his

22 mouth; that his teeth were leaking poison; that Gloria was his mother or grandmother and Steven

23 his father; that "Janet" was both his mother and his sister, and that petitioner was the product of a

24 sexual encounter between "Janet" and Steven.  Steven's desire to have sex with petitioner was

25 therefore incestuous.  These delusions had persisted for years, although petitioner's substance

26 abuse disorder was in remission because of his custody.  If petitioner's condition had been

27

28
_____

[3] Dr. Blak's testimony is found at ECF No. 17-20 at 5-55 (15 RT 911-961).

4

1  induced by substances, it would have cleared up sooner or later.  Because petitioner had been

2  medicated for so long and still experienced delusions in the absence of methamphetamine, Dr.

3  Blak concluded that schizophrenia was the major contributor or nexus that resulted in the offense.

4      Dr. Blak opined that petitioner had experienced schizophrenia on the day of the offense,

5  which affected his perception of external reality and of what he believed to be true.  Petitioner's

6  schizophrenia also affected his judgment and his capacity to know morally right from wrong.

7  According to Dr. Blak, petitioner was legally insane at the time of the shootings.

8          2.  Prosecution Case

9              a.  Testimony of Dr. Cavanaugh[4]

10      Dr. Gary Cavanaugh, a psychiatrist, had evaluated petitioner for competency in relation to

11  another case in 2008, and evaluated him in relation to this case in September 2021.  In 2008, Dr.

12  Cavanaugh had found no evidence of any psychotic disorder.  Given petitioner's age at the time

13  of the instant offense (30) and lack of prior treatment for schizophrenia, Dr. Cavanaugh disagreed

14  with the schizophrenia diagnosis as unsupported by the longitudinal record.  He concluded that at

15  the time of the shooting, petitioner suffered from methamphetamine-induced psychotic disorder,

16  methamphetamine and cannabis use disorder, and severe antisocial personality disorder.

17      Dr. Cavanaugh explained that psychotic symptoms caused by methamphetamine abuse are

18  similar to those exhibited by persons with schizophrenia.  While psychotic symptoms from

19  methamphetamine usually subside after a few days of non-use, long-term use can result in the

20  persistence of symptoms after the person has stopped using.  The manual used by psychiatrists to

21  diagnose mental illnesses cautions against making a schizophrenia diagnosis in the face of

22  chronic methamphetamine usage, because the two disorders can present identically.

23      When asked whether petitioner was capable of knowing and understanding the nature and

24  quality of his acts on the day of the shooting, Dr. Cavanaugh explained: "[T]hat is a tough one,

25  because I mean, you know, generally acts that are committed when under the influence of

26

27  [4]  Dr. Cavanaugh's testimony is found at ECF No. 17-20 at 55-96 (15 RT 961-1002).  He was a
court appointed expert who was called as a prosecution witness.

28

1    substances are generally not allowed to be covered by a [legal insanity] assessment.  I certainly

2    think he was not able to think through his actions, there's no doubt about that.  Since I did not

3    really see him at the time, I can't be certain about this, but he probably was not aware that it was

4    wrong, but that's based on methamphetamine psychotic disorder, not schizophrenia.  Thus, it's a

5    substance related offense."

6         Upon further questioning, Dr. Cavanaugh opined that petitioner "understood" and "knew

7    what he was doing" on the day of the shooting, but might not have realized it was wrong based on

8    the effects from the methamphetamine.  Noting that petitioner heard voices and became angry

9    after using methamphetamine, Dr. Cavanaugh concluded that petitioner was legally sane because

10   he did not have a "mental disorder other than the methamphetamine induced psychotic disorder."

11            b.  Testimony of Dr. Weiss[5]

12        Dr. Wendy Weiss, a forensic psychologist employed by the Board of Parole Hearings,

13   interviewed petitioner twice in late 2021.  He told her that he began using cannabis at age 12 and

14   methamphetamine at age 14, was using methamphetamine daily at the time of the shooting, and

15   was experiencing the effects of methamphetamine when he shot Steven and Gloria.  Petitioner

16   also reported that he began experiencing auditory hallucinations six years earlier, which Dr.

17   Weiss noted is a symptom consistent with methamphetamine use.

18        Dr. Weiss concluded that petitioner was suffering from methamphetamine-induced

19   psychosis at the time of the shooting and was not legally insane.  She explained that, based on her

20   interviews with petitioner and the materials she reviewed (e.g., medical and psychiatric records,

21   police report, expert reports, competency evaluations from 2018 and 2020), petitioner did not

22   appear to lack an ability to understand and appreciate his behavior due to a mental disorder,

23   disease, or defect.  Dr. Weiss further opined that any perceptual distortions petitioner may have

24   experienced at the time of the shootings were the result of the methamphetamine intoxication.

25   ////

26

27   _____

     [5] Dr. Weiss's testimony is found at ECF No. 17-20 at 96-128 (15 RT 1002-1034).  She was a
     court appointed expert who was called as a prosecution witness.

28

1      Dr. Weiss had considered and rejected the possibility that a disorder independent of

2  methamphetamine use had caused petitioner's apparent psychosis on the day of the shooting.  She

3  found such a proposition unsupported by the records and history.  She added that she saw

4  evidence petitioner had acted in a "purposeful, goal directed way" which "revealed a more

5  calculated consideration of what he was doing."

6      When asked how petitioner's methamphetamine use, which predated his purported

7  auditory hallucinations, impacted her conclusion that defendant was suffering from

8  methamphetamine-induced psychosis, Dr. Weiss stated: "[Petitioner's] methamphetamine abuse

9  in my opinion likely precipitated the onset of a mental illness. . . .  [H]aving read all the records, I

10  think that he has developed a mental illness over time.  The etiology is, I can't say with certainty

11  that it's because he used methamphetamine.  Perhaps he would have developed this disorder

12  anyhow.  It would certainly exacerbate it, his perceptual distortions and hallucinations and

13  delusions that he has reported were certainly exacerbated and magnified if not solely caused by

14  the methamphetamine use and intoxication."

15          3.  Outcome

16  The jury found petitioner legally sane on all counts.

17      D.  Sentencing

18  Petitioner was sentenced to a total term of 124 years to life.

19  II.      Post-Conviction Proceedings

20      Petitioner timely appealed, and the California Court of Appeal affirmed the judgment of

21  conviction.  ECF No. 17-35.  The California Supreme Court denied review on February 21, 2024.

22  ECF No. 17-39.  No applications for collateral post-conviction relief were filed in the state courts.

23      A pro se federal petition was docketed on June 6, 2024.  ECF No. 1.  The undersigned

24  appointed counsel to represent petitioner, ECF No. 10, and the operative amended petition was

25  filed by counsel on February 14, 2025, ECF No. 21.  Respondent answered, ECF No. 28, and

26  petitioner filed a traverse, ECF No. 31.

27  ////

28  ////

1          STANDARDS GOVERNING HABEAS RELIEF UNDER THE AEDPA

2     I.     Statutory Standards for Federal Habeas Review Under 28 U.S.C. § 2254

3          28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of

4     1996 ("AEDPA"), provides in relevant part as follows:

5                     (d) An application for a writ of habeas corpus on behalf of a person
                    in custody pursuant to the judgment of a state court shall not be
6
                    granted with respect to any claim that was adjudicated on the merits
7                   in State court proceedings unless the adjudication of the claim –

8                     (1) resulted in a decision that was contrary to, or involved an
                    unreasonable application of, clearly established Federal law, as
9                   determined by the Supreme Court of the United States; or

10                    (2) resulted in a decision that was based on an unreasonable
                    determination of the facts in light of the evidence presented in the
11                  State court proceeding.

12         The statute applies whenever the state court has denied a federal claim on its merits,

13    whether or not the state court explained its reasons.  Harrington v. Richter, 562 U.S. 86, 99

14    (2011).  State court rejection of a federal claim will be presumed to have been on the merits

15    absent any indication or state-law procedural principles to the contrary.  Id. (citing Harris v. Reed,

16    489 U.S. 255, 265 (1989) (presumption of a merits determination when it is unclear whether a

17    decision appearing to rest on federal grounds was decided on another basis)).  "The presumption

18    may be overcome when there is reason to think some other explanation for the state court's

19    decision is more likely."  Id. at 99-100.

20         The phrase "clearly established Federal law" in § 2254(d)(1) refers to the "governing legal

21    principle or principles" previously articulated by the Supreme Court.  Lockyer v. Andrade, 538

22    U.S. 63, 71-72 (2003).  Only Supreme Court precedent may constitute "clearly established

23    Federal law," but courts may look to circuit law "to ascertain whether…the particular point in

24    issue is clearly established by Supreme Court precedent."  Marshall v. Rodgers, 569 U.S. 58, 64

25    (2013).

26         A state court decision is "contrary to" clearly established federal law if the decision

27    "contradicts the governing law set forth in [the Supreme Court's] cases."  Williams v. Taylor, 529

28    U.S. 362, 405 (2000).  A state court decision "unreasonably applies" federal law "if the state

1  court identifies the correct rule from [the Supreme Court's] cases but unreasonably applies it to

2  the facts of the particular state prisoner's case." Id. at 407-08.  It is not enough that the state court

3  was incorrect in the view of the federal habeas court; the state court decision must be objectively

4  unreasonable.  Wiggins v. Smith, 539 U.S. 510, 520-21 (2003).

5        Review under § 2254(d) is limited to the record that was before the state court.  Cullen v.

6  Pinholster, 563 U.S. 170, 180-181 (2011).  The question at this stage is whether the state court

7  reasonably applied clearly established federal law to the facts before it.  Id. at 181-182.  In other

8  words, the focus of the § 2254(d) inquiry is "on what a state court knew and did."  Id. at 182.

9  Where the state court's adjudication is set forth in a reasoned opinion, §2254(d)(1) review is

10  confined to "the state court's actual reasoning" and "actual analysis."  Frantz v. Hazey, 533 F.3d

11  724, 738 (9th Cir. 2008) (en banc).  A different rule applies where the state court rejects claims

12  summarily, without a reasoned opinion.  In Richter, supra, the Supreme Court held that when a

13  state court denies a claim on the merits but without a reasoned opinion, the federal habeas court

14  must determine what arguments or theories may have supported the state court's decision, and

15  subject those arguments or theories to § 2254(d) scrutiny.  Richter, 562 U.S. at 102.

16      II.      Petitioner's Argument For De Novo Review[6]

17        Petitioner argues at length that the court should decline to apply § 2254(d)'s deferential

18  standards in light of the U.S. Supreme Court's Decision in Loper Bright Enterprises v. Raimondo,

19  603 U.S. 369 (2024).  ECF No. 20 at 15, 34-44.  Petitioner relies on Loper Bright for the

20  proposition that "any attempt by Congress to curtail the Court's power to [interpret the federal

21  Constitution independently of state court decisions] – such as that set forth in section 2254(d)(1) –

22  is unconstitutional under Article III."  Id. at 15.  The undersigned rejects this contention.  Loper

23

24  [6]  Petitioner's argument that § 2254(d) should not apply is based on the asserted
    unconstitutionality of the statute.  The court notes that petitioner has failed to comply with Rule
25  5.1, Fed. R. Civ. P., which requires notice to the Attorney General of the United States when the
    constitutionality of a federal statute is questioned in a pleading and provides an opportunity for
26  intervention by the United States.  Because the undersigned finds that petitioner's arguments do
    not present a potentially meritorious theory of unconstitutionality, petitioner's noncompliance
27  will be overlooked.  See Rule 5.1(c) (court may reject a constitutional challenge prior to United
    States' decision whether to intervene).

28

1  Bright overruled <u>Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.</u>, 467 U.S. 837

2  (1984), which had required a significant degree of judicial deference to federal agency

3  interpretations of federal statutes.  No federal agency interpretation is at issue here, nor is this a

4  case about federal court deference to a federal agency.  Neither the Supreme Court nor the Ninth

5  Circuit has indicated that <u>Loper Bright</u> casts any doubt on the ongoing validity of established

6  habeas corpus jurisprudence.

7          Nothing in the holding or reasoning of <u>Loper Bright</u> implicates Congress's authority to

8  limit federal habeas relief or compels a conclusion that the court's Article III authority is abridged

9  by § 2254(d).  The U.S. Supreme Court has specifically directed lower federal courts to apply §

10  2254(d) as a "constitutionally valid rule of decision."  <u>See</u> <u>Brown v. Davenport</u>, 596 U.S. 118,

11  127 (2022) ("When Congress supplies a constitutionally valid rule of decision, federal courts

12  must follow it.  In AEDPA, Congress announced such a rule.").  In <u>Felker v. Turpin</u>, 518 U.S.

13  651 (1996), the Supreme Court upheld AEDPA against arguments that it violated Article III.  The

14  Ninth Circuit has also expressly upheld the constitutionality of § 2254(d), rejecting the argument

15  that it "supplants judicial judgment with legislative choice."  <u>Crater v. Galaza</u>, 491 F.3d 1119,

16  1129 (9th Cir. 2007); <u>see also</u> <u>Allen v. Ornoski</u>, 435 F.3d 945, 960–61 & n.11 (9th Cir. 2006)

17  (noting that § 2254(d) does not violate Article III or separation of power principles).  Because

18  <u>Loper Bright</u> has not been extended to the habeas context and <u>Crater</u> remains binding authority,

19  the undersigned joins those courts which have rejected <u>Loper Bright</u> challenges to AEDPA.  <u>See</u>,

20  <u>e.g.</u>, <u>Townsel v. Davis</u>, 2025 U.S. Dist. LEXIS 207244, *2-3 (E.D. Cal. 2025) (Thurston, D.J);

21  <u>Miles v. Phillips</u>, 2025 U.S. Dist. LEXIS 171758, *24-26 (E.D. Cal. 2025) (Cota, M.J.); <u>Burns v.</u>

22  <u>Bean</u>, 2025 U.S. Dist. LEXIS 145582, *9 n.5 (D. Nev. 2025); <u>Mann v. Thornell</u>, 2025 U.S. Dist.

23  LEXIS 198127, *5-11 (D. Ariz. 2025).

24                                          <u>DISCUSSION</u>

25      I.      <u>Petitioner's Allegations and Pertinent State Court Record</u>

26          Petitioner's sole claim for relief is that constitutionally insufficient evidence supported the

27  jury's finding that petitioner was legally sane at the time of the commission of the offenses.

28  ////

1    II.    The Clearly Established Federal Law

2          Due process requires that each essential element of a criminal offense be proven beyond a

3    reasonable doubt.  In re Winship, 397 U.S. 358, 364 (1970).  In reviewing the sufficiency of

4    evidence to support a conviction, "the relevant question is whether, after viewing the evidence in

5    the light most favorable to the prosecution, any rational trier of fact could have found the essential

6    elements of the crime beyond a reasonable doubt."  Jackson v. Virginia, 443 U.S. 307, 319

7    (1979).  If the evidence supports conflicting inferences, the reviewing court must presume "that

8    the trier of fact resolved any such conflicts in favor of the prosecution," and the court must "defer

9    to that resolution."  Id. at 326.  "A reviewing court may set aside the jury's verdict on the ground

10   of insufficient evidence only if no rational trier of fact could have agreed with the jury."  Cavazos

11   v. Smith, 565 U.S. 1, 2 (2011) (per curiam).

12   III.   The State Court's Ruling

13          Petitioner's claim was presented on direct appeal.  Because the California Supreme Court

14   denied discretionary review, the opinion of the California Court of Appeal constitutes the last

15   reasoned decision on the merits and is the subject of habeas review in this court.  See Ylst v.

16   Nunnemaker, 501 U.S. 797 (1991); Ortiz v. Yates, 704 F.3d 1026, 1034 (9th Cir. 2012).

17          The state court ruled in pertinent part as follows:

18           Defendant argues there is insufficient evidence to support the jury's
             sanity verdict. He claims there is no substantial evidence that he
19           was legally sane at the time of the shooting, as the opinions of Dr.
             Cavanaugh and Dr. Weiss "were not grounded in the facts of the
20           case." We are not persuaded.

21           A. *Applicable Legal Principles and Standard of Review*

22           If a defendant pleads both not guilty and not guilty by reason of
             insanity, the trial is bifurcated into guilt and sanity phases. In the
23           guilt phase, the defendant is conclusively presumed to have been
             legally sane at the time of the offense. (*People v. Elmore* (2014) 59
24           Cal.4th 121, 140-141; § 1026, subd. (a).) If the defendant is found
             guilty, the trial proceeds to the sanity phase, in which the defendant
25           has the burden to prove he was legally insane by a preponderance
             of the evidence. (*Elmore*, at p. 141; §§ 1026, subd. (a), 25, subd.
26           (b).)

27           Under California law, persons who are mentally incapacitated are
             deemed incapable of committing crimes. (§ 26; *People v. Powell*
28           (2018) 5 Cal.5th 921, 955.) Mental incapacity is determined by the

*M'Naghten* test for legal insanity set forth in section 25, subdivision (b). (*Powell*, at p. 955.) Under *M'Naghten,* legal insanity is established if the defendant had a mental disease or defect when he committed the crimes, and because of that disease or defect, he was incapable of either knowing or understanding the nature and quality of his acts or was incapable of knowing or understanding that his acts were morally or legally wrong. (§ 25; subd. (b); *Powell*, at p. 955; *People v. Elmore*, *supra*, 59 Cal.4th at p. 140; CALCRIM No. 3450.) [fn. omitted] The defendant's insanity does not need to be permanent in order to establish a defense. The relevant inquiry is the defendant's mental state at the time the crimes were committed. (*People v. Kelly* (1973) 10 Cal.3d 565, 577.)

"A defendant may not be found insane solely on the basis of addiction to, or abuse of, intoxicating substances. (§ 29.8.) This provision 'makes no exception for brain damage or mental disorders caused solely by one's voluntary substance abuse but which persists after the immediate effects of the intoxicant have dissipated. Rather, it erects an absolute bar prohibiting use of one's voluntary ingestion of intoxicants as the sole basis for an insanity defense, regardless whether the substances caused organic [brain] damage or a settled mental disorder which persists after the immediate effects of the intoxicant have worn off.' " (*People v. McCarrick* (2016) 6 Cal.App.5th 227, 247; see also *People v. Robinson* (1999) 72 Cal.App.4th 421, 427 [discussing former § 25.5 before it was renumbered § 29.8].) However, "[w]here the mental disease or defect is caused *in part* by an addiction or abuse of alcohol" a legal insanity defense is still available "depending on whether the defendant proves that it was his mental disease or defect that caused him to be unable to tell right from wrong." (*People v. Cabonce* (2009) 169 Cal.App.4th 1421, 1436; see CALCRIM No. 3450 ["If the defendant suffered from a settled mental disease or defect caused by the long-term use of drugs or intoxicants, that settled mental disease or defect combined with another mental disease or defect may qualify as legal insanity.  A *settled mental disease or defect* is one that remains after the effect of the drugs or intoxicants has worn off"].)

Only "individuals rendered insane solely because of their substance abuse should be treated differently than those afflicted by mental illness through no conscious volitional choice on their part." (*People v. Robinson*, *supra*, 72 Cal.App.4th at p. 428.) "Thus, there can be no insanity defense when the inability to tell right from wrong derived (1) solely from an addiction or abuse of intoxicating substances, *or* (2) from a mental defect or disorder that itself was caused solely by such addiction or abuse." (*People v. Cabonce*, *supra*, 169 Cal.App.4th at p. 1434.)

We review a jury's sanity determination for substantial evidence. (*People v. Powell*, *supra*, 5 Cal.5th at pp. 956-957.) We review the entire record in the light most favorable to the jury's determination and affirm that determination if it is supported by evidence that is reasonable, credible and of solid value. (*Id*. at p. 957.) "We do not question the credibility of a witness's testimony, so long as it is 'not inherently improbable,' nor do we reconsider the weight to be given

any particular item of evidence." (*People v. Navarro* (2021) 12 Cal.5th 285, 302.)

B. *Analysis*

We see no basis for reversal. On the record before us, a reasonable jury could have found that defendant failed to prove he was legally insane at the time of the shooting by a preponderance of the evidence. "Because the defendant has the burden of proof on the issue of insanity, 'the question on appeal is not so much the substantiality of the evidence favoring the jury's finding as whether the evidence contrary to that finding is of such weight and character that the jury could not reasonably reject it.' " (*People v. McCarrick*, *supra*, 6 Cal.App.5th at pp. 247-248.) This standard has not been satisfied here. While the defense experts (Dr. Fraser and Dr. Blak) agreed that defendant suffered from a severe mental illness (schizophrenia), that fact does not conclusively establish that defendant was legally insane when he shot Steven and Gloria. (*People v. Powell*, *supra*, 5 Cal.5th at p. 955.) On this issue, the court-appointed experts (Dr. Cavanaugh and Dr. Weiss) disagreed with Dr. Blak. They concluded that defendant was not suffering from schizophrenia but rather methamphetamine-induced psychosis. Defendant asserts that Dr. Cavanaugh's and Dr. Weiss's opinions were flawed because they failed to consider certain evidence "bearing upon his sanity." However, "[i]t was for the jury to evaluate the testimony of the experts, examine the bases for their opinions and determine whom to believe." (*People v. Chavez* (2008) 160 Cal.App.4th 882, 891.) As our Supreme Court has explained, "The issue of legal sanity is . . . a complex and uncertain one about which fully competent experts can reasonably disagree." (*Powell*, at p. 958.) After considering the evidence presented, the jury found that defendant was legally sane at the time of the shooting. Providing the experts were adequately qualified, which defendant did not dispute, the jury was entitled to evaluate and weigh their opinions. (*Ibid.*) Nothing more is required to uphold the jury's sanity verdict (*ibid.*), and there is no legal basis for us to disturb that verdict.

ECF No. 17-37 at 12-15.

IV.    Review Under 28 U.S.C. § 2254(d)

There can be no "unreasonable application" of federal law by a state court, as needed to overcome the statutory bar to federal relief, if the Supreme Court itself has never applied a rule in the particular context at issue.  See White v. Woodall, 572 U.S. 415 (2014) (no unreasonable application of precedent where state court refused to give no-adverse-inference instruction related to petitioner's decision not to testify at penalty phase of capital trial, because Fifth Amendment right to such instruction is well-established only for guilt phase); see also Lopez v. Smith, 574 U.S. 1, 6 (2014) (AEDPA bars consideration of claim where "our case law does not clearly

1  establish the legal proposition needed to grant respondent habeas relief"). The U.S. Supreme

2  Court has never held that due process review under <u>Jackson v. Virginia</u> applies categorically to

3  sanity findings,[7] or to any other issue related to an affirmative defense on which the defendant

4  bears the burden of proof. Nor has the Supreme Court recognized a right grounded in the Due

5  Process Clause to any particular standard of proof in the sanity context. Accordingly, other courts

6  have found that habeas relief is categorically unavailable on claims like the one presented here.

7  <u>See e.g.</u>, <u>Pop v. Yarborough</u>, 354 F. Supp. 2d 1132, 1138 (C.D. Cal. 2005) ("it does not appear

8  that Petitioner's [due process] claim relating to his insanity defense is even cognizable under

9  habeas because sanity was not an element of the offenses for which he was convicted."); <u>Gall v.</u>

10  <u>Parker</u>, 231 F.3d 265, 307 (6th Cir. 2000) (finding claim that evidence was insufficient to

11  establish sanity was not cognizable under § 2254 where sanity is not an element of crime),

12  <u>overruled on other grounds by</u> <u>Bowling v. Parker</u>, 344 F.3d 487, 501 n.3 (6th Cir. 2003).

13          The undersigned agrees. The <u>Jackson</u> standard places guardrails on post-conviction

14  deference to jury verdicts, specifically in order to protect the fundamental due process

15  requirements that criminal offenses be proven by the prosecution beyond a reasonable doubt.

16  <u>Jackson</u>, 433 U.S. at 315-318 (discussing <u>Winship</u>, <u>supra</u>). These requirements do not apply to

17  affirmative defenses, which are independent of the prosecution's burden of proof and are subject

18  to a different standard of proof. <u>See</u> <u>People v. Hernandez</u>, 22 Cal. 4th 512, 521-22 (2000)

19  (defendant bears the burden of establishing insanity as an affirmative defense, by a preponderance

20  of the evidence). Because sanity is not an element of criminal liability that must be proved by the

21  prosecution beyond a reasonable doubt, <u>Hernandez</u>, 22 Cal. 4th at 522, <u>Winship</u> is inapplicable.

22  Where <u>Winship</u> does not apply in the first instance, <u>Jackson</u> is inapposite by its own terms.[8]

23  _____

24  [7] In <u>Moore v. Duckworth</u>, 443 U.S. 713 (1979), the Supreme Court entertained a <u>Jackson</u> claim
    that due process was violated by insufficient evidence of sanity, but the state law applicable to the

25  criminal trial in that case required the prosecution to prove the defendant's sanity beyond a
    reasonable doubt. <u>Moore</u> therefore does not support the proposition that <u>Jackson</u> applies where,

26  as here, the defense bears the burden. <u>See</u> <u>Hawkins v. Horal</u>, 572 F. App'x 480, 480-481 (9th Cir.
    2014) (reaching the same conclusion).

27  [8] Petitioner relies on <u>Perez v. Cain</u>, 529 F.3d 588 (5th Cir. 2008), in which the Fifth Circuit
    assumed (as had the state court of appeal) that a challenge to the sufficiency of evidence of sanity

28  (continued…)

14

1    <u>Jackson</u> does not apply by necessary implication either, because the Supreme Court has

2    never recognized a federal right to present an insanity defense.  <u>See</u> <u>Medina v. California</u>, 505

3    U.S. 437, 449 (1992); <u>Clark v. Arizona</u>, 548 U.S. 735, 752 n.20 (2006).  Absent an underlying

4    due process entitlement at trial, there is nothing for <u>Jackson</u> to protect.  In an unpublished case,

5    the Ninth Circuit has relied on the absence of a constitutional right to an insanity defense to find

6    that § 2254(d) bars relief on a claim challenging on due process grounds a trial court's failure to

7    give an insanity instruction.  <u>Marquez v. Gentry</u>, 708 Fed. Appx. 924, 924-925 (9th Cir. 2018).

8    The same result is required here: because there is no substantive federal right to the insanity

9    defense, postconviction review—in this case for sufficiency of the evidence—is entirely a matter

10   of state law and provides no grounds for federal habeas relief.  <u>See</u> <u>id.</u> at 925; <u>Pop</u>, 354 F. Supp.

11   2d at 1138.

12        Even assuming arguendo that <u>Jackson</u> applies by analogy and that petitioner's claim is

13   cognizable in federal habeas, relief is unavailable.  Application of <u>Jackson</u> would require the

14   court to ask whether a rational factfinder could have concluded that petitioner failed to prove his

15   insanity by a preponderance of the evidence.  <u>See</u> <u>Cavazos</u>, 565 U.S. at 2 (verdict may be set

16   aside "only if *no* rational trier of fact could have agreed with the jury") (emphasis added).  A

17   "double dose of deference" to the verdict is required when a <u>Jackson</u> claim is reviewed under the

18   AEDPA.  <u>Boyer v. Belleque</u>, 659 F.3d 957, 964 (9th Cir. 2011).

19   The California Court of Appeal did not apply <u>Jackson</u> to petitioner's sufficiency of the evidence

20   claim, so this court asks broadly whether the state court made dispositive factual findings that

21   were objectively unreasonable or relied on legal analysis that was contrary to or objectively

22   unreasonable under <u>Jackson</u>.  <u>See</u> <u>Early v. Packer</u>, 537 U.S. 3, 8 (2002) (even if state court fails to

23   cite or indicate awareness of federal law, its decision must be upheld "so long as neither the

24   reasoning nor the result of the state-court decision contradicts" clearly established U.S. Supreme

25   Court authority).  The appellate court provided sound reasons for its conclusion that the sanity

26   ─────────────────────────────────

27   was governed by <u>Jackson</u> even though defendant bore the burden of proving insanity under state
     law.  Nothing in the opinion indicates that the Fifth Circuit considered the issues discussed above,
     and in any event <u>Perez</u> is not binding on this court.  The undersigned does not find it persuasive.

28

1  verdict was adequately supported by evidence. Two out of three qualified experts who opined on

2  the ultimate question of legal insanity found petitioner to have been sane.[9] As to the relationship

3  of petitioner's psychotic symptoms to his chronic and long-term methamphetamine abuse, the

4  expert witnesses were equally divided. The jury's decision which expert testimony to believe

5  involves credibility determinations, and those are entitled to near total deference. See Jackson,

6  443 U.S. at 326. Although petitioner argues here that the evidence supported a contrary result,

7  that is not the question. This court may not reweigh the evidence or make its own judgments

8  about the credibility and value of various expert opinions, it may only review the state court's

9  judgment for objective unreasonableness. For the reasons already explained, the court finds none.

10                                        CONCLUSION

11        For all the reasons explained above, the state courts' denial of petitioner's claim was not

12  objectively unreasonable within the meaning of 28 U.S.C. § 2254(d). Accordingly, IT IS

13  HEREBY RECOMMENDED that the petition for writ of habeas corpus be denied.

14        These findings and recommendations are submitted to the United States District Judge

15  assigned to the case, pursuant to the provisions of 28 U.S.C. §636(b)(l). Within twenty-one days

16  after being served with these findings and recommendations, any party may file written

17  objections with the court and serve a copy on all parties. Such a document should be captioned

18  "Objections to Magistrate Judge's Findings and Recommendations." If petitioner files objections,

19  he shall also address whether a certificate of appealability should issue and, if so, why and as to

20  which issues. See 28 U.S.C. § 2253(c)(2). Any reply to the objections shall be served and filed

21  within fourteen days after service of the objections. The parties are advised that failure to file

22  ////

23  ////

24

_____

25  [9] The undersigned does not mean to imply that the number of witnesses or quantum of evidence
   on each side of this or any issue is dispositive. Nonetheless, in light of Jackson's directive to
26  view the evidence in the light most favorable to the prosecution, and the criminal defendant's
   burden to prove insanity by a preponderance of the evidence, this point is relevant. The court
27  rejects petitioner's attacks on the conclusions drawn by Drs. Cavanaugh and Weiss, which are the
   sorts of arguments properly made to a jury.

28
                                        16

objections within the specified time may waive the right to appeal the District Court's order.

Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: October 24, 2025

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

17